FILED  1st JUDICIAL DISTRICT COURT
Rio Arriba County
1/28/2022 10:39 AM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

**STATE OF NEW MEXICO**
**COUNTY OF RIO ARRIBA**
**FIRST JUDICIAL DISTRICT COURT**

**ISABELLA K. ZAMARCHI, as Personal**
**Representative of the Wrongful Death**
**Estate of PAULA A. FERGUSON, Deceased,**

No. D-117-CV-2022-00038
Case assigned to Lidyard, Jason

**Plaintiff,**

v.

**HONDA MOTOR COMPANY, LTD., and**
**AMERICAN HONDA MOTOR COMPANY, INC.,**

**Defendants.**

**PLAINTIFF'S ORIGINAL COMPLAINT FOR**
**WRONGFUL DEATH AND PUNITIVE DAMAGES**

COMES NOW Plaintiff, by and through her counsel of record, and states the following as her Original Complaint for Wrongful Death and Punitive Damages against Defendants Honda Motor Company, Ltd., American Honda Motor Company, Inc., and Charles Romero:

**I.     PARTIES**

1.     Plaintiff Isabella K. Zamarchi, as the Personal Representative of the Wrongful Death Estate of Paula A. Ferguson, Deceased, is a resident of Bernalillo County, New Mexico. Pursuant to NMSA § 41-2-3 and NMRA 1-017(B), Plaintiff Isabella K. Zamarchi was appointed as the Personal Representative for the purpose of pursuing all claims available under the New Mexico Wrongful Death Act, by order of the Second Judicial District Court on September 16, 2020.

2.     Defendant Honda Motor Company, Ltd. ("Honda") is a Japanese corporation that has, at all times relevant to this suit, transacted business in the State of New Mexico but has failed to designate a registered agent for service. Service of process upon this Defendant may be had by

**EXHIBIT A**

serving its President at his business address, Nobuhiko Kawamoto, 2-1-1 Minamiaoyama, Minato-Jku, Tokyo, 107-0062.

3.     Defendant American Honda Motor Company, Inc. ("American Honda") is a California corporation duly organized and existing pursuant to law, and is registered to transact business in the State of New Mexico. Defendant American Honda has transacted business in the State of New Mexico at all times relevant hereto, and it may be served with citation by serving its registered agent for service: CT Corporation System, 206 South Coronado Avenue, Española, New Mexico 87532.

## II.     JURISDICTION, VENUE, AND JOINDER

4.     Jurisdiction over the parties and the subject matter herein is proper with this Court pursuant to Article VI of the New Mexico Constitution and the New Mexico long-arm statute, NMSA, Section 38-1-16.   This Court has specific jurisdiction over Defendants Honda and American Honda ("the Honda Defendants") based on their contacts with and conduct directed toward New Mexico and through the stream of commerce including, upon information and belief, its marketing and distribution of vehicles in New Mexico, their provision of service on vehicles and parts in New Mexico, their warranties covering products in New Mexico, and their income derived from sales, service, and repair work performed by the Honda Defendants and their dealers, in New Mexico.   Based on this conduct, the Honda Defendants purposefully directed their activities toward New Mexico and Plaintiff's claims arise out of this conduct which led to Plaintiff's injuries and damages set forth herein.

5.     Venue is proper in Rio Arriba County, New Mexico pursuant to NMSA § 38-3-1 because Defendant American Honda is registered to do business in Rio Arriba County, New Mexico.

6.      Joinder of Plaintiff's claims against all Defendants in this action is proper under Rule 1-020 NMRA because Plaintiff's claims: (1) arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) questions of law and fact common to all Defendants will arise in this action.

### III.    FACTUAL BACKGROUND

7.      All previous paragraphs are incorporated by reference.

8.      On or about August 7, 2020, Plaintiff's decedent Paula A. Ferguson was driving a 1990 Acura Legend bearing VIN JH4KA4532LC009073 ("the subject vehicle") westbound on Dellyne Ave. NW near Coors Boulevard NW in Bernalillo County, New Mexico.

9.      As Plaintiff's decedent Paula A. Ferguson began driving from a stopped position at a stoplight into the intersection, her vehicle was struck by Charles Romero, who was driving a 2017 Nissan Frontier northbound on Coors Boulevard and was distracted and failed to stop at the stoplight at the intersection with Dellyne Ave.

10.     At the time of the accident, Decedent was properly wearing her 3-point seatbelt.

11.     As a result of the accident, Decedent was killed.

12.     The subject vehicle was designed by the Honda Defendants.

13.     The subject vehicle was manufactured by the Honda Defendants.

14.     The subject vehicle was also assembled and tested by the Honda Defendants.

15.      Plaintiff's decedent suffered injuries and damages because the subject vehicle violated several crashworthiness principles and thereby failed to protect her.

16.     There are five recognized crashworthiness principles in the automobile industry. They are as follows:

(1)     Maintain survival space;

(2)      Provide proper restraint throughout the entire accident;

(3)      Prevent ejection;

(4)      Distribute and channel energy; and

(5)      Prevent post-crash fires.

17.      When the National Highway Traffic Safety Administration ("NHTSA") created the Federal Motor Vehicle Safety Standards ("FMVSS") in the late 1960's, the preamble to the safety standards included a crashworthiness definition similar to that referenced above, "that the public is protected against unreasonable risk of crashes occurring as a result of the design, construction, or performance of motor vehicles and is also protected against unreasonable risk of death or injury in the event crashes do occur."

18.      The National Transportation Safety Board ("NTSB") has also stated that "[v]ehicle crashworthiness refers to the capacity of a vehicle to protect its occupants from crash forces. This protection—which is achieved, in part, by vehicle structure—includes maintaining a survival space around the occupant, retaining the occupant within that space, and reducing the forces applied to the occupant."

19.      Crashworthiness safety systems in a vehicle must work together like links in a safety chain. If one link fails, the whole chain fails.

20.      For decades, automobile manufacturers have been telling the general public and others how important it is to make safe vehicles.

21.      For instance, in 1993, General Motors stated that "Safety isn't one thing. It's everything."

22.      Mary Barra, CEO of General Motors, testified to Congress in 2014 that, "Our customers and their safety are at the center of everything we do." Jeff Boyer, Vice-President of

Global Vehicle Safety at General Motors, has stated that "Nothing is more important than the safety of our customers in the vehicles they drive."

23.     General Motors has also stated in the past that, "The rich don't deserve to be safer... Isn't it time we realized safety is not just for the pampered and the privileged? Safety is for all."

24.     Ford has stated in the past that it is so obsessed with safety that only a person's mother is more obsessed with that person's safety than Ford.

25.     Lee Iacocca, former President of Ford Motor Company stated, while President and CEO of Chrysler, that "Every American has the right to a safe vehicle."

26.     Gerald Greenwald, chairman of Chrysler, then sent a letter to every Chrysler dealership in 1988 stating that Chrysler intended to honor that right.

27.     Honda has stated that it believes that safety is for everyone, including for other vehicle occupants and for pedestrians.



28.     In 2012, Volvo stated that, "Technologies for meeting the goal of zero injuries and fatalities are basically known today - it is a matter of how to apply, finance, distribute and activate."

29.     Because every American has the right to a safe vehicle, because safety is for all, and because technologies for meeting the goal of zero injuries and fatalities are basically known today, it is incumbent upon auto manufacturers to investigate and find out what other automakers

5

are doing with regards to safety and to apply those same methods or technology to their own vehicle.

30.     Furthermore, an automaker cannot choose to use safer technology in Europe, Australia, Japan, or some other country and refuse or fail to offer that same safety technology to consumers in America.

31.     It is further incumbent upon auto manufacturers to protect consumers by using knowledge that a manufacturer has acquired over decades and decades of vehicle design, testing, and reverse engineering of other manufacturers' vehicles.

32.     In fact, insofar as society permits vehicle manufacturers to operate in such a way that they are permitted to sell highly complex, potentially dangerous, and also potentially highly profitable products on the market, manufacturers have a duty to do their very best to ensure that the vehicle will not be harmful to buyers, their households, or third parties.

33.     This is cemented by the fact that every state of the United States has case law which holds that every person has a duty to exercise reasonable care to avoid a foreseeable risk of injury to others.

### IV.     CLAIMS FOR RELIEF

**COUNT 1:**
**Strict Products Liability: Defective Design/Manufacture/Failure to Warn**
**Against the Honda Defendants**

34.     All previous paragraphs are incorporated by reference.

35.     The Honda Defendants are in the business of designing, manufacturing, testing, assembling, marketing, and/or distributing vehicles, including the subject vehicle.

36.     The Honda Defendants designed, manufactured, tested, assembled, marketed, distributed, and/or sold the vehicle that was involved in the accident that led to Plaintiff's decedent's death.

37.     The subject vehicle was defective and unreasonably dangerous for its intended use.

38.     The subject vehicle was defective at the time it left the Honda Defendants' control.

39.     Reasonable consumers would not have been aware of the defective condition of the vehicle.

40.     Plaintiff's decedent wase not aware of the defects in the subject vehicle.

41.     It was entirely foreseeable to and well-known by the Honda Defendants that accidents and incidents involving their vehicles, such as occurred herein, would on occasion take place during the normal and ordinary use of said vehicle.

42.     The fatal injuries complained of occurred because the vehicle in question was not reasonably crashworthy, and was not reasonably fit for unintended, but clearly foreseeable, accidents. The vehicle in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

43.     The Honda Defendants, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, tested, assembled, marketed, and/or distributed said vehicle in question.

44.     As detailed herein, the vehicle contains and/or the Honda Defendants have committed either design, manufacturing, testing, assembly, marketing, and or distribution defects.

45.     The Honda Defendants either knew or should have known of at least one safer alternative design which would have prevented the fatal injuries to the decedent.

46.     As detailed herein, the vehicle contains multiple design defects, the Honda Defendants have committed multiple acts of engineering negligence and have created false, misleading, and/or deceptive marketing intended to lure prospective buyers.

47.     As illustrated herein and below are specific examples of how the subject vehicle was defective and/or unreasonably dangerous, how the Honda Defendants were negligent, how the Honda Defendants misrepresented the safety of vehicles in general, and/or how the Honda Defendants, specifically through their false, misleading, and/or deceptive marketing and ads, foisted upon the public an unsafe vehicle.

48.     In addition to the foregoing, the Honda Defendants, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, tested, assembled, marketed, and/or distributed said vehicle in question to be unreasonably dangerous and defective within the meaning of Section 402(A) Restatement (Second) Torts, in that the vehicle was unreasonably dangerous as designed, manufactured, tested, assembled, marketed, and/or distributed because the Honda Defendants knew and/or should have known of the following, non-exhaustive list of defects:

      a.     The subject vehicle violated principles of crashworthiness;

      b.     The subject vehicle is defective and unreasonably dangerous;

      c.     The subject vehicle failed to contain state of the art safety advances;

      d.     The subject vehicle failed to utilize safer alternative designs that had been used on production vehicles for years before the subject vehicle entered the stream of commerce;

      e.     The subject vehicle failed to use UHSS, AHSS, EHSS, boron, ferrite, martensite, TRIP, complex phase and dual phase steel in its side structure, rocker panel, door ring, pillars and roof;

      f.     The subject vehicle failed to utilize a Side Impact Protection System to protect near side occupants;

g.      The subject vehicle failed to contain a seat mounted airbag;

h.      The subject vehicle failed to contain a door mounted airbag;

i.      The subject vehicle failed to contain a side tube airbag;

j.      The subject vehicle failed to contain any type of torso or head bag;

k.      The subject vehicle's door latch separated which permitted excessive intrusion;

l.      The weak and inferior material used for structural integrity allowed for excessive intrusion;

m.      The occupant survival space/cabin/safety cell/safety cage was violated because the surrounding structure was weak and inferior;

n.      The subject vehicle was not properly tested;

o.      The subject vehicle was not subjected to rigorous engineering analysis;

p.      The subject vehicle was not subjected to finite element modeling and finite element analysis;

q.      The subject vehicle was not subjected to accident simulations to evaluate different material and material;

r.      The subject vehicle lacked countermeasures to address excessive intrusion;

s.      The subject vehicle lacked countermeasures to address near side occupant protection;

t.      The Honda Defendants bragged that building safe vehicles is the most important thing we do;

u.      The Honda Defendants bragged that automobile safety is the foundation of every Honda vehicle;

v.      The Honda Defendants bragged that they have built a storehouse of safety technology since their first vehicle was built;

w.      The Honda Defendants bragged that Safety is one of their foremost concerns;

x.      The Honda Defendants bragged that safety is always on their mind;

y.     The Honda Defendants bragged about their responsibility to produce vehicles with the best overall safety possible;

z.     The Honda Defendants bragged that they collect accident data and apply that data to the planning and design of new models to continuously improve automobile safety;

aa.    The Honda Defendants bragged that they work hard to stay at the cutting edge of technology;

bb.    The Honda Defendants bragged that computer aided engineering is indispensable to their prototype development process;

cc.    The Honda Defendants bragged that they use CAE to test new design ideas and structures;

dd.    The Honda Defendants bragged that they use finite element method to create models to simulate real testing;

ee.    The Honda Defendants bragged that they believe that safety is fundamental for making vehicles;

ff.    The Honda Defendants bragged that they believe in Kaizen-continuous improvement since no process can ever be declared perfect, there is always room for improvement;

gg.    The Honda Defendants bragged that they always work to improve by putting forth new ideas and making the best of their abilities;

hh.    The Honda Defendants bragged that they believe that everyone deserves to be safe;

ii.    The Honda Defendants pledged to the American consumer that they will have continual improvement, that they will learn from their mistakes and that they need to do better;

jj.    The Honda Defendants bragged that they create vehicles with your family in mind;

kk.    The Honda Defendants misrepresented the safety quality of the subject vehicle;

ll.    The Honda Defendants lured consumers into their lair by false and deceptive advertising;

mm.   These defects, negligence and misrepresentations were the direct, producing, substantial, proximate cause of the fatal injuries and damages in question.

49.   The acts and/or omissions stated above were done so with conscious disregard, willful and wanton disregard for the harm that would be caused, malice, gross negligence, and/or unconscionable conduct of the Honda Defendants, which entitles Plaintiff to punitive damages.

50.   Plaintiff's injuries and damages were caused by a condition or conditions of the subject vehicle which were not substantially changed or unforeseeably altered after the Honda Defendants placed the subject vehicle on the market.

51.   The defective conditions of the subject vehicle, either singularly or in combination, were a cause of Plaintiff's injuries and damages.

## COUNT 2:
## Negligence Against the Honda Defendants

52.   All previous paragraphs are incorporated by reference.

53.   In addition to and/or in the alternative to the strict product liability claims asserted herein, Defendants were  negligent in the design, manufacture, testing, assembly, marketing, and/or distribution of the subject vehicle.

54.   Companies that are in the business of designing, testing, manufacturing, marketing, distributing and selling products are never allowed to needlessly endanger consumers.

55.   Nothing should be more important to companies that design, manufacture, test and sell products than consumer safety.

56.   Because nothing should be more important than consumer safety, companies that design, manufacture, and sell products should always analyze the product for potential hazards or defects – at every stage of production.

57.     In fact, for automobile manufacturers and sellers, in designing a vehicle, efforts should be made by manufacturers and sellers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

58.     Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

59.     If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

60.     If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

61.     A company that does not conduct a proper engineering analysis that would help it to identify potential risk, hazards, and/or dangers that could seriously injure someone is negligent.

62.     The Honda Defendants owed a duty to use reasonable care in the design, manufacture, testing, assembly, marketing, and/or distribution of the subject vehicle.

63.     The Honda Defendants failed to use reasonable care when they designed, manufactured, tested, assembled, marketed, distributed, and/or sold the subject vehicle, and consequently put a product on the market that was unreasonably dangerous for its intended or reasonably anticipated use as discussed herein.

64.     As noted earlier, most (if not all) engineering associations in the United States (and around the world) have a code of ethics.

65.     The number 1 fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public."

66.     Accordingly, since paramount means "superior to all others," all vehicle engineers have to hold the safety, health, and welfare of the public as their highest considerations when they

design vehicles. Indeed, General Motors, for instance, has admitted under oath that its engineers have to hold paramount the safety, health, and welfare of the public, and that manufacturers have to make efforts to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

67.     Ford has also testified under oath that it agrees that a vehicle engineer's primary responsibility is to identify potential risks, hazards, and dangers that can cause serious injury or death.

68.     Ford has further testified under oath that Ford "has a moral obligation to do those things that are feasible and practical to reduce the risk of injury and death to customers."

69.     Accordingly, the Honda Defendants had a duty to conduct a proper engineering analysis and to conduct proper development, engineering, design, testing and engineering analysis that would help them to identify potential risks, hazards, and/or dangers that could seriously injure or fatally harm someone. The Honda Defendants breached said duty.

70.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not subjected to rigorous design, development, engineering analysis and testing.

71.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not properly tested for the type of impact that occurred in this case to determine what countermeasures were necessary to adequately protect occupants if the vehicle leaves the road surface and/or if the occupant has the seat reclined.

72.     With respect to the subject vehicle, based upon information and/or belief, the subject vehicle was not properly equipped to prevent injuries and fatalities that are preventable.

73.     Based upon information and/or belief, the subject vehicle was not subjected to rigorous engineering analysis due to no or insufficient FEM, no FEA, and/or no CAD.

74.     Based upon information and/or belief, the subject vehicle was not subjected to rigorous FEM, testing and/or analysis.

75.     The Honda Defendants had a duty to do these things. The Honda Defendants breached said duty.

76.     When the Honda Defendants designed the subject vehicle, they did not reinvent the wheel. The Honda Defendants used (or should have used) an enormous amount of human capital which had been acquired from numerous different engineers who had worked on many prior vehicles. This knowledge would have been (or should have been) utilized in different aspects of the designs of the vehicle to make the vehicle safer in foreseeable accidents such as what occurred in this case.

77.     The Honda Defendants are  currently in exclusive possession and control of all the technical materials and other documents regarding the design, manufacture, and testing of the vehicle in question. Defendants are  also in possession of what, if any, engineering analysis was performed.

78.     However, it is expected that after all of these materials are produced in discovery and/or after the Honda Defendants' employees and corporate representatives have been deposed, additional allegations may come to light.

79.     Lastly, the materials from other models, years, and countries will provide evidence regarding what the Honda Defendants knew, when they knew it, and about what was utilized or not utilized as well as the reasons why.

80.     The Honda Defendants, as the designers, manufacturers, suppliers, and/or distributors of the subject vehicle, had a duty to use ordinary care in designing, making, testing, and packaging the subject vehicle.

81.     The Honda Defendants had a duty to use ordinary care to avoid a foreseeable risk of injury caused by a condition of the subject vehicle or the manner in which it was used.

82.     The Honda Defendants' duty to use ordinary care to avoid a foreseeable risk of injury continued after the subject vehicle left its possession, if they knew, or in the exercise of ordinary care should have known, of a foreseeable risk of injury caused by a condition of the subject vehicle or the manner in which it could be used.

83.     The Honda Defendants had a duty to adequately and properly test the subject vehicle and similar vehicles to avoid a foreseeable risk of injury.

84.     The Honda Defendants had a duty to use ordinary care to warn of a risk of injury about which they knew or should have known.

85.     The Honda Defendants had a duty to use ordinary care to provide directions or instructions for use of the subject vehicle to avoid a risk of injury caused by a foreseeable manner of use.

86.     The Honda Defendants had a duty to use ordinary care to inspect the subject vehicle for conditions which could expose users to risk of injury. Alternatively, the Honda Defendants had a duty to inspect the subject vehicle before selling it for conditions which could expose users to risk of injury when they had knowledge which would lead a reasonably prudent person to undertake an inspection.

87.     The Honda Defendants had a duty to repair or replace the subject vehicle before selling it with conditions which would expose users to risk of injury when they knew or should have known of the need for repair.

88.     The duty of care increases with the severity of danger. Thus, the Honda Defendants' duty was especially high given the likelihood of death or serious injury from a failure of the subject vehicle during normal use.

89.     The Honda Defendants breached their duties of care, and, therefore, were negligent in at least the following particulars:

    a.    The subject vehicle violated principles of crashworthiness;

    b.    The subject vehicle is defective and unreasonably dangerous;

    c.    The subject vehicle failed to contain state of the art safety advances;

    d.    The subject vehicle failed to utilize safer alternative designs that had been used on production vehicles for years before the subject vehicle entered the stream of commerce;

    e.    The subject vehicle failed to use UHSS, AHSS, EHSS, boron, ferrite, martensite, TRIP, complex phase and dual phase steel in its side structure, rocker panel, door ring, pillars and roof;

    f.    The subject vehicle failed to utilize a Side Impact Protection System to protect near side occupants;

    g.    The subject vehicle failed to contain a seat mounted airbag;

    h.    The subject vehicle failed to contain a door mounted airbag;

    i.    The subject vehicle failed to contain a side tube airbag;

    j.    The subject vehicle failed to contain any type of torso or head bag;

    k.    The subject vehicle's door latch separated which permitted excessive intrusion;

    l.    The weak and inferior material used for structural integrity allowed for excessive intrusion;

m.      The occupant survival space/cabin/safety cell/safety cage was violated because the surrounding structure was weak and inferior;

n.      The subject vehicle was not properly tested;

o.      The subject vehicle was not subjected to rigorous engineering analysis;

p.      The subject vehicle was not subjected to finite element modeling and finite element analysis;

q.      The subject vehicle was not subjected to accident simulations to evaluate different material and material;

r.      The subject vehicle lacked countermeasures to address excessive intrusion;

s.      The subject vehicle lacked countermeasures to address near side occupant protection;

t.      The Honda Defendants bragged that building safe vehicles is the most important thing we do;

u.      The Honda Defendants bragged that automobile safety is the foundation of every Honda vehicle;

v.      The Honda Defendants bragged that they have built a storehouse of safety technology since their first vehicle was built;

w.      The Honda Defendants bragged that Safety is one of their foremost concerns;

x.      The Honda Defendants bragged that safety is always on their mind;

y.      The Honda Defendants bragged about their responsibility to produce vehicles with the best overall safety possible;

z.      The Honda Defendants bragged that they collect accident data and apply that data to the planning and design of new models to continuously improve automobile safety;

aa.     The Honda Defendants bragged that they work hard to stay at the cutting edge of technology;

bb.     The Honda Defendants bragged that computer aided engineering is indispensable to their prototype development process;

cc.     The Honda Defendants bragged that they use CAE to test new design ideas and structures;

dd.     The Honda Defendants bragged that they use finite element method to create models to simulate real testing;

ee.     The Honda Defendants bragged that they believe that safety is fundamental for making vehicles;

ff.     The Honda Defendants bragged that they believe in Kaizen-continuous improvement since no process can ever be declared perfect, there is always room for improvement;

gg.     The Honda Defendants bragged that they always work to improve by putting forth new ideas and making the best of their abilities;

hh.     The Honda Defendants bragged  that they believe that everyone deserves to be safe;

ii.     The Honda Defendants pledged to the American consumer that they will have continual improvement, that they will learn from their mistakes and that they need to do better;

jj.     The Honda Defendants bragged that they create vehicles with your family in mind;

kk.     The Honda Defendants misrepresented the safety quality of the subject vehicle;

ll.     The Honda Defendants lured consumers into their lair by false and deceptive advertising;

mm.     These defects, negligence and misrepresentations were the direct, producing, substantial, proximate cause of the fatal injuries and damages in question.

90.     At the time of the incident in question, Plaintiff's decedent was a foreseeable user of the subject vehicle for a purpose and in a manner which could reasonably be foreseen.

91.     The Honda Defendants could not reasonably expect that the risks of injury set forth herein were obvious or known to foreseeable users of the subject vehicle, including Plaintiff's decedent.

18

92. The negligent acts and omissions of the Honda Defendants, either singularly or in combination, were a cause of Plaintiff's injuries and damages.

## COUNT 3:
### Misrepresentation Against the Honda Defendants

93. All previous paragraphs are incorporated by reference.

94. The Honda Defendants misrepresented their concern about the safety of occupants of their vehicles.

95. The Honda Defendants misrepresented that safety must come first.

96. The Honda Defendants misrepresented that they have an obligation to protect vehicle occupants in the best possible way should the worst-case scenario arise.

97. Specifically, for decades Honda has touted the safety of its vehicles.

98. The subject vehicle failed to possess all of the state of the art safety equipment qualities that the Honda Defendants have touted for decades.

99. Plaintiff's decedent relied upon these misrepresentations made by the Honda Defendants.

100. The foregoing deceptive, false, and/or misleading marketing, and/or violations of consumer expectations of the Honda Defendants was a cause of the fatal injuries and Plaintiff's damages.

## COUNT 4:
### Damages Against All Defendants

101. All previous paragraphs are incorporated by reference.

102. As a direct and proximate result of the defective condition of the subject vehicle, the negligence of Defendants, and the Defendants' misrepresentations detailed above, Plaintiff's decedent sustained a fatal injury and Plaintiff suffered significant damages.

103.   As such, Plaintiff seeks damages including the following:

a)   The reasonable expenses of necessary medical care and treatment and funeral and burial;

b)   Pain and suffering experienced by Paula A. Ferguson between the time of injury and death;

c)   Loss of earnings, loss of earning capacity, and loss of household services;

d)   The value of Paula A. Ferguson's life apart from her earning capacity;

e)   The mitigating or aggravating circumstances attending the wrongful act, neglect or default;

f)   Emotional distress to Paula A. Ferguson's surviving family; and

g)   All other damages to which the Wrongful Death Estate of Paula A. Ferguson is entitled under New Mexico law.

## COUNT 5:
## Punitive Damages Against the Honda Defendants

104.   All previous paragraphs are incorporated by reference.

105.   In addition to placing the unreasonably dangerous and defective subject vehicle into the market, giving rise to strict liability and negligence liability, and in addition to the negligence and misrepresentation claims stated above, the Honda Defendants also acted intentionally, maliciously, willfully, recklessly, and/or with wanton disregard for the safety of others.

106.   Among others, these intentional, malicious, willful, reckless, and/or wanton acts and omissions of the Honda Defendants, either singularly, in combination, or based on the cumulative conduct of employees of the Honda Defendants, were a cause of Plaintiff's injuries and damages. Accordingly, the Honda Defendants are liable for punitive damages.

## V.     CONCLUSION

WHEREFORE, Plaintiff requests judgment against Defendants for her damages, punitive damages, pre-judgment and post-judgment interest at the legal rate, costs, and such other and further relief to which Plaintiff may be entitled under the facts and circumstances.

Respectfully submitted,

**THE TRACY FIRM**

*/s/ E. Todd Tracy*
E. Todd Tracy
4701 Bengal Street
Dallas, Texas  75235
Telephone: (214) 324-9000
Fax: (972) 387-2205
ttracy@vehiclesafetyfirm.com

Justin R. Kaufman
Rosalind B. Bienvenu
Caren I. Friedman
**DURHAM, PITTARD & SPALDING, LLP**
505 Cerrillos Road, Suite A209
Santa Fe, New Mexico 87501
Telephone: (505) 986-0600
Fax: (505) 986-0632
jkaufman@dpslawgroup.com
rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

***Attorneys for Plaintiff***

21

FILED  1st JUDICIAL DISTRICT COURT
Rio Arriba County
1/28/2022 10:39 AM
KATHLEEN VIGIL CLERK OF THE COURT
Tamara Snee

**STATE OF NEW MEXICO**
**COUNTY OF RIO ARRIBA**
**FIRST JUDICIAL DISTRICT COURT**

**ISABELLA K. ZAMARCHI, as Personal**
**Representative of the Wrongful Death**
**Estate of PAULA A. FERGUSON, Deceased,**

No. D-117-CV-2022-00038

                           **Plaintiff,**

v.

**HONDA MOTOR COMPANY, LTD., and**
**AMERICAN HONDA MOTOR COMPANY, INC.,**

                           **Defendants.**

### JURY DEMAND

    **COMES NOW** Plaintiff, by and through her attorneys of record,  and hereby demands a

trial by a twelve (12) person jury in this cause of action, and tenders the appropriate fee with the

filing of this application.

                    Respectfully submitted,

                    **THE TRACY FIRM**

                    */s/ E. Todd Tracy*
                    E. Todd Tracy
                    4701 Bengal Street
                    Dallas, Texas  75235
                    Telephone: (214) 324-9000
                    Fax: (972) 387-2205
                    ttracy@vehiclesafetyfirm.com

                    Justin R. Kaufman
                    Rosalind B. Bienvenu
                    Caren I. Friedman
                    **DURHAM, PITTARD & SPALDING, LLP**
                    505 Cerrillos Road, Suite A209
                    Santa Fe, New Mexico 87501
                    Telephone: (505) 986-0600
                    Fax: (505) 986-0632
                    jkaufman@dpslawgroup.com

rbienvenu@dpslawgroup.com
cfriedman@dpslawgroup.com

***Attorneys for Plaintiff***

FILED FIRST JUDICIAL DISTRICT COURT
Rio Arriba County
2/3/2022 4:20 PM
KATHLEEN VIGIL CLERK OF THE COURT
Desiree Brooks

**RETURN OF SUMMONS**

| First Judicial District Court<br>**Rio Arriba County, New Mexico**<br>**P.O. Drawer 40**<br>**Tierra Amarilla, New Mexico  87575**<br>**Court Telephone: (505) 455-8335** | **Case Number:**<br><br>D-117-CV-2022-00038<br>**Assigned Judge:**<br>Case assigned to Lidyard, Jason |
|---|---|
| **ISABELLA K. ZAMARCHI, as Personal**<br>**Representative of the Wrongful Death**<br>**Estate of PAULA A. FERGUSON,**<br>**Deceased,**<br>         **Plaintiff,**<br>**v.**<br>**HONDA MOTOR COMPANY, LTD., and**<br>**AMERICAN HONDA MOTOR**<br>**COMPANY, INC.,**<br>         **Defendants.** | **Defendant:**<br><br>**AMERICAN   HONDA   MOTOR**<br>**COMPANY, INC.**<br>**c/o   CT   Corporation   System,**<br>**Registered Agent**<br>**206 South Coronado Avenue**<br>**Espanola, New Mexico  87532** |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

**1.**      A lawsuit has been filed against you.  A copy of the lawsuit is attached.  The Court issued this Summons.

**2.**      You must respond to this lawsuit in writing.  You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons.  (The date you are considered served with the Summons is determined by Rule 1-004 NMRA)  The Court's address is listed above.

**3.**      You must file (in person or by mail) your written response with the Court.  When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.**      If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5.**      You are entitled to a jury trial in most types of lawsuits.  To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.**      If you need an interpreter, you must ask for one in writing.

**7.**      You may wish to consult a lawyer.  You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Rio Arriba County, New Mexico, this 28th day of   January  , 2022.

KATHLEEN VIGIL
CLERK OF THE DISTRICT COURT

1

DURHAM, PITTARD & SPALDING, L.L.P.

By:  _Deputy_

_/s/ Justin R. Kaufman_
Signature of Attorney for Plaintiff
Justin R. Kaufman
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
jkaufman@dpslawgroup.com
Telephone No.:  (505) 986-0600
Facsimile:  (505) 986-0632

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

2

**STATE OF NEW MEXICO**
**COUNTY OF RIO ARRIBA**
**FIRST JUDICIAL DISTRICT COURT**

**ISABELLA K. ZAMARCHI, as Personal**          No.   D-117-CV-2022-00038
**Representative of the Wrongful Death Estate**
**of PAULA A. FERGUSON, Deceased,**

                              **Plaintiff,**

v.

**HONDA MOTOR COMPANY, LTD., and**
**AMERICAN HONDA MOTOR COMPANY, INC.,**

                              **Defendants.**

                              **RETURN[1]**

STATE OF _New Mexico_ )
                                )ss
COUNTY OF _Santa Fe_ )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in _Rio Arriba_ county on the _3rd_ day of _February_ , _2022_, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]     to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

3

[ ]   to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[X]   to *CT Corporation System* an agent authorized to receive service of process for defendant *American Honda Motor Company Inc.*

[ ]   to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]   to _____ (*name of person*), _____, (*title of person authorized to receive service. Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: *$50 + Taxes / Mileage*

*C. M. W.*
Signature of person making service
*AW Legal Documents*
Title (*if any*)

Subscribed and sworn to before me this *3rd* day of *February* *2022*

*Margery Finn*
~~Judge,~~ notary ~~or other officer~~
authorized to administer oaths
*Notary*
Official title

STATE OF NEW MEXICO
NOTARY PUBLIC
MARGERY FINN
COMMISSION # 1041616
COMMISSION EXPIRES 04/11/2022

## USE NOTE

1.     Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.     If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

4

FILED 1st JUDICIAL DISTRICT COURT
Rio Arriba County
2/24/2022 9:48 AM
KATHLEEN VIGIL CLERK OF THE COURT
Gloria Landin

## RETURN OF ALIAS SUMMONS

| | |
|---|---|
| **First Judicial District Court**<br>**Rio Arriba County, New Mexico**<br>P.O. Drawer 40<br>**Tierra Amarilla, New Mexico 87575**<br>**Court Telephone: (505) 455-8335** | **Case Number:**<br>**D-117-CV-2022-00038**<br><br>**Assigned Judge:**<br>**Hon. Jason Lidyard** |
| **ISABELLA K. ZAMARCHI, as Personal**<br>**Representative of the Wrongful Death**<br>**Estate of PAULA A. FERGUSON,**<br>**Deceased,**<br>        **Plaintiff,**<br>**v.**<br>**HONDA MOTOR COMPANY, LTD., and**<br>**AMERICAN HONDA MOTOR**<br>**COMPANY, INC.,**<br>        **Defendants.** | **Defendant:**<br><br>**AMERICAN HONDA MOTOR**<br>**COMPANY, INC.**<br>**c/o Corporation Service Company,**<br>**Registered Agent**<br>**110 E. Broadway St.**<br>**Hobbs, New Mexico 88240** |

**TO THE ABOVE NAMED DEFENDANT(S)**: Take notice that

**1.** A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this Summons.

**2.** You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Alias Summons. (The date you are considered served with the Alias Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.

**3.** You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.

**4.** If you do not respond in writing, the Court may enter judgment against you as requested in the lawsuit.

**5**. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.

**6.** If you need an interpreter, you must ask for one in writing.

**7.** You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Rio Arriba County, New Mexico, this <u>14</u> day of <u>February</u>, 2022.

KATHLEEN VIGIL
CLERK OF THE DISTRICT COURT

1

DURHAM, PITTARD & SPALDING, L.L.P.

By: _____

Deputy



*/s/ Justin R. Kaufman*

Signature of Attorney for Plaintiff
Justin R. Kaufman
505 Cerrillos Rd., Suite A209
Santa Fe, NM 87501
jkaufman@dpslawgroup.com
Telephone No.:  (505) 986-0600
Facsimile:  (505) 986-0632

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO
RULES OF CIVIL PROCEDURE FOR DISTRICT COURTS.

**STATE OF NEW MEXICO**
**COUNTY OF RIO ARRIBA**
**FIRST JUDICIAL DISTRICT COURT**

**ISABELLA K. ZAMARCHI, as Personal**          No.  D-117-CV-2022-00038
**Representative of the Wrongful Death Estate**
**of PAULA A. FERGUSON, Deceased,**

                                    **Plaintiff,**

**v.**

**HONDA MOTOR COMPANY, LTD., and**
**AMERICAN HONDA MOTOR COMPANY, INC.,**

                                    **Defendants.**

**RETURN**[1]

STATE OF _____   )                    <u>**SEE ATTACHED AFFIDAVIT OF SERVICE**</u>
                        )ss
COUNTY OF _____    )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this alias summons in _____ county on the _____ day of _____, _____, by delivering a copy of this alias summons, with a copy of complaint attached, in the following manner:

**(check one box and fill in appropriate blanks)**

[ ]      to the defendant _____ (*used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint*)

[ ]      to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (*used when service is by mail or commercial courier service*).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]      to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (*used when the defendant is not presently at place of abode*) and by mailing by first class mail to the defendant at _____ (*insert defendant's last known mailing address*) a copy of the summons and complaint.

3

[ ]     to _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ (*insert defendant's business address*) and by mailing the summons and complaint by first class mail to the defendant at _____ (*insert defendant's last known mailing address*).

[ ]     to _____, an agent authorized to receive service of process for defendant _____.

[ ]     to _____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (*used when defendant is a minor or an incompetent person*).

[ ]     to _____ (*name of person*), _____, (*title of person authorized to receive service.  Use this alternative when the defendant is a corporation or an association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision*).

Fees: _____

_____
Signature of person making service
_____
Title (*if any*)

Subscribed and sworn to before me this _____ day of _____, _____

_____
Judge, notary or other officer
authorized to administer oaths
_____
Official title

## USE NOTE

1.      Unless otherwise ordered by the court, this return is not to be filed with the court prior to service of the summons and complaint on the defendant.

2.      If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

[Adopted effective August 1, 1988; as amended by Supreme Court Order 05-8300-01, effective March 1, 2005; by Supreme Court Order 07-8300-16, effective August 1, 2007; by Supreme Court Order No. 12-8300-026, effective for all cases filed or pending on or after January 7, 2013.]

4

STATE OF NEW MEXICO, COUNTY OF RIO ARRIBA
FIRST JUDICIAL DISTRICT COURT

**ISABELLA K. ZAMARCHI, as Personal Representative of
the Wrongful Death Estate of PAULA A. FERGUSON,
Deceased**

*Plaintiff(s) / Petitioner(s)*

v.                                                                    Case No. D-117-CV-2022-00038

**HONDA MOTOR COMPANY, LTD., and AMERICAN
HONDA MOTOR COMPANY, INC.**

*Defendant(s) / Respondent(s)*

## AFFIDAVIT OF SERVICE

I, Johnny Rivas, being duly sworn, state:

I am 18 years or older and not a party to this action or a member of a corporation or organization that is
a party to this action.

I served the following documents on American Honda Motor Company, Inc. in Lea County, NM on
February 16, 2022 at 10:35 am at 110 E. Broadway St., Hobbs, NM 88240 by leaving the following
documents with Louann Soto who as Clerk at Corporation Service Company is authorized by
appointment or by law to receive service of process for American Honda Motor Company, Inc.

Plaintiff's Original Complaint for Wrongful Death and Punitive Damages
Jury Demand
Alias Summons - American Honda Motor Company, Inc.

Additional Description:
I delivered the documents to Louann Soto, clerk for Registered Agent Corporation Service Company.

White Female, est. age 40, glasses: N, Black hair, 160 lbs to 180 lbs, 5' 6" to 5' 9".

Signature
Johnny Rivas
(575) 631-4618

Subscribed and sworn to before me this 22 day of February 202 , by

_Jonnie Rivas_

Witness my hand and official seal.

My commission expires: 8-21-2022

STATE OF NEW MEXICO
NOTARY PUBLIC
MARIA C PUENTES
Commission Number 1133051
My Commission Expires  August 21, 2022

_Maria c puentes_

Notary Public